UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEBORAH D. MITCHELL,<br><br>          Plaintiff,<br><br>    v.<br><br>STATE OF WASHINGTON; JOHN DOES 1-5, employees of the Washington State Crime Laboratory; PIERCE COUNTY, a subdivision of the State of Washington; JOHN DOES 6-10, employees of Pierce County,<br><br>          Defendants. | CASE NO. C08-5531BHS<br><br>ORDER GRANTING DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Pierce County's Motion for Summary Judgment. Dkt. 24. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On August 14, 2008, Plaintiff Deborah D. Mitchell filed a complaint in the Superior Court for the State of Washington in and for the County of Pierce. Dkt. 1 at 4-10 ("Complaint"). Plaintiff alleges that she was falsely imprisoned and detained in violation of her due process rights by Defendants State of Washington; John Does 1-5, employees of the Washington State Crime Laboratory; Pierce County, a subdivision of the State of Washington; and John Does 6-10, employees of Pierce County. *Id.*, ¶¶ 3.1-5.3.

On September 4, 2008, Defendant Pierce County removed the action to this Court. Dkt. 1 at 1-2.

On April 23, 2009, Defendant State of Washington filed a motion for summary judgment. Dkt. 11. On June 30, 2009, the Court granted the motion (Dkt. 17) and ultimately dismissed Plaintiff's claims against the State and John Does 1-5, employees of the Washington State Crime Laboratory (Dkt. 21).

On December 31, 2009, Defendant Pierce County filed a motion for summary judgment seeking dismissal of Plaintiff's claims against Pierce County and John Does 6-10, employees of Pierce County. Dkt. 24. On January 11, 2010, Plaintiff responded. Dkt. 25. On January 22, 2010, Defendant replied. Dkt. 27.

## II. FACTUAL BACKGROUND

On May 25, 2005, Pierce County Sheriff's deputies stopped Plaintiff's vehicle for exceeding the speed limit. Complaint, ¶ 2.1. Plaintiff alleges that she was driving the vehicle (*id.*) while the Declaration of Probable Cause in Support of Information states that Plaintiff was a passenger in the vehicle (Dkt. 12 at 7). It is undisputed, however, that Plaintiff was the registered owner of the vehicle.

The deputies searched the vehicle pursuant to the traffic stop and found items that they believed to be controlled substances and associated with controlled substances. *Id*. First, the deputies found a black pouch that Plaintiff admitted belonged to her. *Id*. The pouch contained "several syringes and a glass tube that contained a small amount of white powder (field-tested positive for methamphetamine)." *Id*.

Second, the deputies found other items in the rear seat area that they "recognized . . . as being associated with methamphetamine manufacturing." *Id*. These items were a box with a very strong chemical odor, one jar containing a damp white substance, one jar containing a clear liquid, and coffee filters. *Id*.; *see also* Dkt. 10 at 16-18 (pictures of car and items). Plaintiff alleges that the jars contained "cleaning agents." Complaint, ¶ 2.2.

ORDER - 2

Plaintiff was then arrested and booked into the Pierce County Jail. *Id.* On May 27, 2005, Plaintiff was arraigned on two charges as follows: (1) unlawful manufacturing of a controlled substance and (2) unlawful possession of a controlled substance. Dkt. 12 at 6-7.

On May 31, 2005, Pierce County Deputy Kory L. Shaffer obtained a warrant to search Plaintiff's vehicle. Dkt. 10, Exh. B. The Pierce County Prosecuting Attorney sent some of the items seized from the vehicle search to the Washington State Patrol Crime Lab ("WSPCL") in Pierce County, Washington, for analysis. According to Terence McAdam, a WSPCL representative, the Crime Lab "received a request for analysis form along with one 'sealed can' of evidence from the Pierce County Sheriff's Offfice" on June 21, 2005. Dkt. 13, Declaration of Terence McAdam ("McAdam Dec.") at 2.

According to Mr. McAdam, the evidence was analyzed by the WSPCL for traces of illegal controlled substances from July 7, 2005, to July 11, 2005. McAdam Dec. at 2. The parties agree that the analysis was completed on July 11, 2005, and indicated that there was no sign of illegal controlled substances or precursor chemicals in that evidence. *Id.* at 4 (Crime Laboratory Report). Mr. McAdam maintains that a Pierce County employee received the report on July 12, 2005. The Crime Laboratory Report bears a Pierce County Prosecuting Attorney "copy received" stamp dated July 14, 2005. *Id.*

Plaintiff remained in Pierce County Jail until September 12, 2005, when the Pierce County Prosecuting Attorney's Office filed a motion to dismiss "for the reason that the Crime Lab Report received by the State on September 9, 2005 did not identify any controlled substances, precursors to controlled substances or reaction by-products from the manufacture of controlled substances." Dkt. 12 at 16 (Motion and Order for Dismissal with Prejudice). Plaintiff was released from jail shortly thereafter. Complaint, ¶ 2.9.

# III. DISCUSSION

## A. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) ("Rule 56"). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific

statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Defendant's Motion**

First, Plaintiff claims that she was falsely imprisoned. Complaint, ¶¶ 3.1-3.3. In Washington, the statute of limitations for a claim of false imprisonment is two (2) years. RCW 4.16.100(1). The claim accrues on the date of arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 n. 7 (9th Cir. 1998) (citation omitted).

In this case, Plaintiff was arrested on May 25, 2005 and she filed her complaint on August 15, 2008. Although the statute may be tolled for sixty days while Plaintiff exhausted her remedies with the county, Plaintiff filed her complaint over three years after her arrest. Defendant argues that this claim is barred by the statute of limitations. The Court agrees. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for false imprisonment.

Second, Plaintiff claims that she was deprived of her liberty and property without due process of law.[1] Complaint, ¶¶ 4.1-4.4. The Ninth Circuit has stated that "the loss of liberty caused by an individual's mistaken incarceration 'after the lapse of a certain amount of time' gives rise to a claim under the Due Process Clause of the Fourteenth Amendment." *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001). In this case, Plaintiff may have been mistakenly incarcerated for the unlawful manufacturing of a controlled substance, but there is no evidence that she was mistakenly incarcerated for the unlawful possession of a controlled substance. To the contrary, the white powdery substance in the black pouch field-tested positive for methamphetamine. Plaintiff completely ignores this fact and argues that the exculpatory lab report on the items found in the backseat would have automatically resulted in her being released from incarceration. Plaintiff provides no authority for the proposition that exculpatory

---

[1] Nowhere does Plaintiff argue that she was arrested without probable cause in violation of the Fourth Amendment. Therefore, the Court will assume, as Defendant argues, that the deputies had probable cause to arrest Plaintiff.

ORDER - 5

evidence on one charge results in the dismissal of a separate charge that was based on other, independent evidence.  Therefore, Plaintiff has failed to create a question of fact whether she was mistakenly incarcerated on the charge of unlawful possession of a controlled substance.

Plaintiff also alleges that the prosecutor was under a duty to turn over the exculpatory crime lab report "as soon as [it was] received."  Complaint, ¶ 5.3.  There is no question that a constitutional right has been violated if a prosecutor fails to disclose exculpatory evidence to a defendant during the course of the prosecution.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also United States v. Bagley*, 473 U.S. 667, 675 (1985) (stating that the *Brady* rule requires the prosecutor "to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial"); *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) ("The animating purpose of *Brady* is to preserve the fairness of criminal trials."), *cert. denied*, 549 U.S. 1125 (2007).  However, a *Brady* violation "may be cured . . . by belated disclosure of evidence, so long as the disclosure occurs 'at a time when disclosure would be of value to the accused.'" *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1093 (9th Cir. 2009) (quoting *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000)).

In this case, Plaintiff again fails to recognize that the evidence was possibly exculpatory as to only one charge against her and not all the charges against her.  Even if the evidence should have been turned over sooner than it was, Plaintiff was in no way denied a "fair trial" as all charges were eventually dismissed.  Moreover, the information was disclosed at a time when disclosure was of value to Plaintiff because she was able to have the charge dismissed before proceeding to trial.

Therefore, Plaintiff has failed to establish that there exist material questions of fact regarding her claim that her constitutional rights were violated.  The Court grants Defendant's motion for summary judgment on Plaintiff's due process claim as to John Does 6-10.

Finally, Plaintiff asserts a municipal liability claim against Pierce County under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). To establish municipal liability under § 1983, a plaintiff must show that (1) she was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009) (quotation omitted). In this case, Plaintiff has failed to establish a constitutional violation. Therefore, the Court grants Defendant Pierce County's motion for summary judgment on Plaintiff's claim for municipal liability.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant Pierce County's Motion for Summary Judgment (Dkt. 24) is **GRANTED**.

DATED this 26th day of January, 2010.

BENJAMIN H. SETTLE
United States District Judge